UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DISH NETWORK L.L.C.,**

**Plaintiff,**

**v.**                                                                      **Case No:  6:12-cv-1629-Orl-41TBS**

**TV NET SOLUTIONS, LLC,**
**MOHAMMAD MUSTAFA, GLOBAL**
**SATELLIT IP TV SCANDINAVIAN AB**
**and BASEM HALABI,**

**Defendants.**
_____/

## ORDER

THIS CAUSE is before the Court on Plaintiff's, Dish Network L.L.C. ("Dish Network"),

Motion for Default Judgment and for a Permanent Injunction (Doc. 73) and Motion for Default

Judgment Damages (Doc. 79) (collectively, the "Motions for Default Judgment"). United States

Magistrate Judge Thomas B. Smith submitted a Report and Recommendation ("R&R") on October

10, 2014, recommending that this Court grant in part the Motions for Default Judgment. (Doc. 86,

at 24). To date, no party has objected to the R&R. For the reasons set forth below, this Court will

modify Subsections II.B.1 and II.B.2 of the R&R and will adopt and confirm the remainder.

### I.    BACKGROUND

The facts and procedural history in this case are adequately set forth in Section I of the

R&R. By way of background, Dish Network is in the business of providing television

programming through satellite or Internet Protocol Television ("IPTV").[1] (Am. Compl., Doc. 49,

---

[1] IPTV can be defined as "a system by which television providers deliver television
services to consumers using the Internet, rather than traditional platforms such as cable or
satellite." (R&R at 2 n.2).

¶ 9). Defendant TV Net Solutions, LLC ("TV Net") offers television programming through IPTV or an Internet streaming service ("WebTV"). (*Id.* ¶¶ 17–18). Defendant Global Satellite IP TV Scandinavian AB ("GTV") provides the channels, as well as IPTV set-top boxes, to TV Net, which are then offered to TV Net's customers as part of TV Net's services. (*Id.* ¶¶ 20–21). Defendant Mohammad Mustafa is the owner and Chief Executive Officer of TV Net, (*id.* ¶ 3), while Defendant Basem Halabi is the President of GTV, (*id.* ¶ 5).

Dish Network alleges that it owns copyrights in the programming on a number of foreign Arabic-language channels (the "Channels")[2] by virtue of written Agreements[3] with foreign Networks[4] that grant Dish Network the exclusive right to distribute that programming in the United States. (*Id.* ¶ 11; Mot. Default J., Doc. 73, at 5–8). According to Dish Network, "Defendants have been distributing, performing, and facilitating unauthorized access" to the Channels in the United States, in contravention of Dish Network's exclusive rights. (Am. Compl. ¶ 14). Specifically, GTV "captures satellite broadcasts of the Channels, encodes them for Internet transmission, and then retransmits the Channels to servers that are provided by, controlled, and maintained by" GTV and TV Net. (*Id.* ¶ 21). "From there[,] the Channels are transmitted by GTV and TV Net to customers that have requested access to them using their subscription to TV Net's IPTV or WebTV service." (*Id.*).

---

[2] For purposes of Dish Network's Motions for Default Judgment, those Channels include: Aghapy TV, Al Arabiya, Al Yawm, Dream 2, ESC, Future TV, IQRAA, MBC, MBC Drama, MBC Kids, MBC Masr, New TV, Nile Drama, and Noursat. (Mot. Default J., Doc. 73, at 4).

[3] The Agreements are included as exhibits within the following attachments: Doc. Nos. 84-1, 84-2, 84-3. For ease of reference, pinpoint citations to the Agreements will refer to the electronic page number within each attachment.

[4] Not all of the Networks are foreign; at least one seems to be located in the United States. (Doc. 84-1, at 42). Additionally, in two instances, Dish Network contracted with an authorized distributor that was acting on behalf of a Network. (*Id.* at 21, 30).

On October 31, 2012, Dish Network commenced this action by filing the initial Complaint against TV Net and Mr. Mustafa,[5] alleging common law unfair competition. (Doc. 1, ¶¶ 21–27). TV Net filed its Answer on January 4, 2013, (Doc. 18), while Mr. Mustafa filed his Answer on March 6, 2013, (Doc. 27). Thereafter, on December 6, 2013, Dish Network filed its First Amended Complaint for Damages and Injunctive Relief ("Amended Complaint"), which added two defendants: GTV and Mr. Halabi. (Am. Compl. ¶¶ 4–5). The Amended Complaint includes four Counts: (1) direct copyright infringement against all Defendants; (2) contributory copyright infringement against TV Net and Mr. Mustafa; (3) vicarious copyright infringement against TV Net and Mr. Mustafa; and (4) unfair competition against all Defendants. (*Id.* ¶¶ 29–57). Mr. Halabi was served with the Amended Complaint on December 23, 2013, (Doc. 59), and GTV was served on January 16, 2014, (Doc. 60). Upon GTV and Mr. Halabi's failure to respond to the Amended Complaint, the Clerk entered defaults against them on March 14, 2014. (Doc. Nos. 62, 63).

Dish Network settled with TV Net and Mr. Mustafa, and on June 4, 2014, this Court entered the Agreed Permanent Injunction and Order of Partial Dismissal, which dismissed with prejudice TV Net and Mr. Mustafa as Defendants in this case. (Doc. 69, ¶ 6). Dish Network moved for default judgment against GTV and Mr. Halabi on August 18, 2014, and filed a separate Motion for Default Judgment Damages on September 19, 2014. The corresponding R&R recommends that the Motions for Default Judgment be granted.

## II.   STANDARD OF REVIEW

A district "judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court." 28 U.S.C. § 636(b)(1)(A). Upon timely objection, "[t]he district judge

---

[5] A third Defendant, Omar Raheem, who had passed away in June 2012, was dismissed upon the filing of the Amended Complaint. (Mot. Leave Amend, Doc. 43, at 1 & n.1).

must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "Even if no objections to the findings or recommendations have been filed, the district court may undertake 'further review . . . , *sua sponte* or at the request of a party, under a *de novo* or any other standard.'" *Stephens v. Tolbert*, 471 F.3d 1173, 1176 (11th Cir. 2006) (quoting *Thomas v. Arn*, 474 U.S. 140, 154 (1985)). Furthermore, "[w]hether or not proper objections have been filed, the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations." *Gusler v. City of Long Beach*, 823 F. Supp. 2d 98, 109 (E.D.N.Y. 2011) (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)). Accordingly, this Court will modify Subsections II.B.1 and II.B.2 and will adopt and confirm the remainder of the R&R.

## III.   DISCUSSION

### A.   The Magistrate Judge's Recommendations

Subsection II.B.1 of the R&R includes a choice of law analysis, and Subsection II.B.2 determines whether the well-pleaded allegations of Dish Network's Amended Complaint sufficiently state a claim for copyright infringement. This Court agrees with the conclusions reached in each Subsection. Nonetheless, to clarify its holding with regard to choice of law and the application thereof, this Court will modify Subsections II.B.1 and II.B.2 of the R&R to read as follows.

### B.   Modified Subsections

#### 1.   *Choice of law*

Dish Network alleges that GTV and Mr. Halabi infringed on Dish Network's exclusive right to distribute programming on the Channels, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.* (Am. Compl. ¶¶ 29–36). "To make out a prima facie case of copyright infringement,

a plaintiff must show that (1) it owns a valid copyright in the [work] and (2) defendants copied protected elements from the [work]." *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l*, 533 F.3d 1287, 1301 (11th Cir. 2008) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

Where a copyrighted work was created abroad, courts undertake a choice of law analysis to determine which country's law governs each element of a copyright infringement claim. *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 88–92 (2d Cir. 1998); *see also Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290–91 (11th Cir. 2011).[6] The first element, the ownership element, may be governed by a different country's law than the second element, the infringement element. *See Itar-Tass*, 153 F.3d at 90–91. Significantly, the Copyright Act provides no guidance regarding choice of law. *Id.* at 90. Where there is no statutory directive, courts look to the country with the "most significant relationship," which is ascertained by consulting the general factors set forth in Section 6 of the Restatement (Second) of Conflict of Laws (the "Restatement"). *See id.* 90–91 (applying federal common law, which follows the Restatement, because the Copyright Act lacks a choice of law rule); *see also Chau Kieu Nguyen v. JP Morgan Chase Bank, NA*, 709 F.3d 1342, 1345 (11th Cir. 2013) (noting that federal common law "follows

---

[6] Notably, the Copyright Act provides a comprehensive statutory scheme, wherein substantive rights are independently created without regard to foreign law. *See, e.g.*, 17 U.S.C. § 102 (affording copyright protection to "original works of authorship"); *id.* § 104(b)(2) (affording protection to works first published in a foreign country). Therefore, this Court is skeptical as to whether a choice of law inquiry is necessary. *See* Edward Lee, *The New Canon: Using or Misusing Foreign Law to Decide Domestic Intellectual Property Claims*, 46 Harv. Int'l L.J. 1, 45–50 (2005) (rejecting the Second Circuit's analysis in *Itar-Tass*, and advocating for a "clear statement rule" where "[a]bsent clear approval from Congress, a court's use of conflicts-of-laws or other analysis to decide parts of a domestic [intellectual property] claim under foreign law would not be allowed"); *see also* Larry Kramer, *Rethinking Choice of Law*, 90 Colum. L. Rev. 277, 280 (1990) (noting that a choice of law problem only exists "when more than one law appears to govern the disposition of a case").

the approach of the Restatement (Second) of Conflict of Laws"). Those factors include: (1) "the needs of the interstate and international systems"; (2) "the relevant policies of the forum"; (3) "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue"; (4) "the protection of justified expectations"; (5) "the basic policies underlying the particular field of law"; (6) "certainty, predictability and uniformity of result"; and (7) "ease in the determination and application of the law to be applied." Restatement (Second) of Conflict of Laws § 6 (1971).[7]

### a.   Ownership

In light of these principles, the Eleventh Circuit has held that "'[i]nitial ownership of a copyrighted work is determined by the laws in the work's country of origin.'" *Saregama*, 635 F.3d at 1290 (quoting *Lahiri v. Universal Music & Video Distribution, Inc.*, 513 F. Supp. 2d 1172, 1176 n.4 (C.D. Cal. 2007)). However, "there is no guiding case law regarding which country's law governs the issue of copyright transfer." *Id.* at 1292 (emphasis omitted); *see also Itar-Tass*, 153 F.3d at 91 n.11 (refusing "to consider choice of law issues concerning assignments of rights"). Indeed, while the United States generally permits the transfer of copyrights, *see* 17 U.S.C. §§ 201(d), 204(a), other countries do not freely permit such alienability, *see* William Patry, *Choice of Law and International Copyright*, 48 Am. J. Comp. L. 383, 431–32 (2000). Without the benefit of case law, this Court will look to the factors in Section 6 of the Restatement. *See Itar-Tass*, 153

---

[7] Applying the same general principles, the Restatement also provides more detailed choice of law rules with regard to interests in property, *id.* § 222, as well as contracts, *id.* § 188. Understandably, copyright infringement claims, wherein the plaintiff acquired rights by transfer, share similarities to both property and contracts causes of action. *See* William Patry, *Choice of Law and International Copyright*, 48 Am. J. Comp. L. 383, 430–36 (2000). However, here, this Court will rely on the general factors set forth in Section 6.

F.3d at 90–91 (applying "the most significant relationship" rule to determine choice of law regarding initial ownership of a copyright).

In the instant case, common sense requires that United States law governs the validity of the transfers. Initially, looking to Section 6 of the Restatement, the first, second, and third factors weigh in favor of applying United States law. Particularly, Dish Network's cause of action is grounded in the Copyright Act—a United States statute. Dish Network is located in the United States, and two of the four Defendants are located within the United States. Dish Network's exclusive rights are limited to the United States. Dish Network alleges, and GTV and Mr. Halabi are deemed to have admitted, that the infringement occurred within the United States. In light of the strong link to the United States, any other country's interests are inferior.

The fourth factor weighs in favor United States law because it is reasonable to assume that, where the Agreements afford exclusive rights only within the United States, the transacting parties expected to be governed by United States law. The fifth and seventh factors weigh in favor of applying United States law because Dish Network's claims allege violations of the Copyright Act, which strictly governs the substantive rights conferred thereunder. As demonstrated, applying the factors from Section 6 of the Restatement, the United States has the most significant relationship to the copyrights and the parties, and therefore, United States law governs the validity of the transfers.

     *b.*  *Infringement*

Where, as here, the alleged infringement occurred domestically, the United States has the most significant relationship to the infringement, and therefore, United States law will govern that issue. *Itar-Tass*, 153 F.3d at 91. Dish Network alleges that GTV and Mr. Halabi infringed on Dish Network's copyrights by distributing the programming on Channels "to customers in the United

States by way of IPTV and Internet during the time that [Dish Network's] exclusive rights were in effect." (Am. Compl. ¶ 33). Thus, the infringement occurred domestically, and United States law also governs the infringement element of the copyright claim.

2.   *Application*

The well-pleaded allegations in the Amended Complaint sufficiently state a cause of action for copyright infringement. The first element, the ownership element, is satisfied because Dish Network sufficiently alleges that it owned the exclusive right that was the subject of the infringement. As to initial ownership, which is determined by the law of the country of origin, the Networks owned valid copyrights in the programming on the Channels. Each Agreement, which is incorporated into the Amended Complaint by reference, *see Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249, 1266 n.11 (11th Cir. 2006) (Tjoflat, J., concurring), states that the foreign Networks, which already distribute the programming abroad, owned valid copyrights in the programming. Therefore, Dish Network has sufficiently alleged that the foreign Networks were the initial owners of copyrights in the programming. *See Intercom Ventures, LLC v. FasTV, Inc.*, No. 13 C 232, 2013 WL 2357621, at *4 (N.D. Ill. May 28, 2013) (holding that, in reviewing a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), "[a]t this stage in the proceedings, [plaintiff] must simply allege, not prove, ownership . . . of a valid copyrighted work").

As to the validity of the transfers, which is determined pursuant to United States law, "ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law." 17 U.S.C. § 201(d)(1). "Any of the exclusive rights comprised in a copyright . . . may be transferred . . . and owned separately. The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the

copyright owner by this title." *Id.* § 201(d)(2). To be valid, a transfer of copyright ownership must be "in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." *Id.* § 204(a). Additionally, the Copyright Act's statutory standing provision requires that the plaintiff own an "exclusive right." *Id.* § 501(b).

Here, each Agreement specifically conferred upon Dish Network the exclusive right to distribute the programming on the Channels within the United States. The Agreements, either originally or by amendment, were effective during the time of the infringement, and each Agreement was signed by both parties. Therefore, according to the well-pleaded allegations in the Amended Complaint, Dish Network owned the exclusive right to distribute the programming on the Channels in the United States. As the owner of an exclusive right, Dish Network satisfies the first element of the copyright infringement claim, as well as the statutory standing requirement. *See Saregama*, 635 F.3d at 1293 (holding that, in addressing the statutory standing requirement, an assignee of an exclusive right can pursue an infringement claim as the owner of a copyright).

The second element, the infringement element, is satisfied because Dish Network adequately alleges that GTV and Mr. Halabi infringed on Dish Network's exclusive rights. "[T]he owner of [a] copyright . . . has the exclusive rights to . . . distribute copies . . . of the copyrighted work to the public," "to perform the copyrighted work publicly," and "to display the copyrighted work publicly." 17 U.S.C. § 106. "Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright," and as noted, the owner of the copyright may "institute an action for any infringement of that particular right committed while he or she is the owner of it." *Id.* § 501(a)–(b). Here, the Agreements afforded Dish Network the exclusive right to distribute, by IPTV and the Internet, the programming on the Channels. GTV and Mr. Halabi are deemed to admit that they "capture[d] satellite broadcasts of the Channels, encode[d] them for Internet

transmission, and then" retransmitted them to TV Net customers in the United States via IPTV or WebTV. (Am. Compl. ¶ 21). Thus, according to the well-pleaded allegations of the Amended Complaint, GTV and Mr. Halabi infringed upon Dish Network's exclusive rights.

## IV.  CONCLUSION

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. The R&R (Doc. 86) filed on October 10, 2014, is **ADOPTED** and **CONFIRMED**, as modified by this Order.

2. The Motions for Default Judgment (Doc. Nos. 73, 79) are **GRANTED in part**.

3. Count IV of the Amended Complaint is **DISMISSED without prejudice**.

4. Defendants, GTV and Mr. Halabi, together with their officers, agents, servants, employees, attorneys, or other persons acting in active concert or participation with any of the foregoing that receive actual notice of this Order, are permanently enjoined from:

   a. distributing or publically performing in the United States, by Internet or IPTV, content on any of the following channels: Aghapy TV, Al Arabiya, Al Yawm, Dream 2, ESC, Future TV, MBC, MBC Drama, MBC Kids, MBC Masr, and Nile Drama; and

   b. distributing or publically performing in the United States, by IPTV, content on any of the following channels: IQRAA, New TV, and Noursat.

5. This Court retains jurisdiction over this action to enforce the permanent injunction provided in this Order.

6. The Clerk is directed to enter a judgment in favor of Dish Network L.L.C. and against the following Defendants jointly and severally in the amount of $956,649.00: Global Satellit IP TV Scandinavian AB and Basem Halabi.

7. After entry of judgment, the Clerk shall close this case.

**DONE** and **ORDERED** in Orlando, Florida on November 25, 2014.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties